## CARSON v. RAILROAD.

(Filed April 2, 1901.)

1. APPEAL — *Instructions — Exceptions and Objections—Supreme Court Rule 27.*

    An exception to a charge which fails to point out specifically the errors complained of will not be considered.

2. INSTRUCTIONS—*Defense—Evidence.*

    The Court will not charge on a point not relied on in the trial and as to which no evidence was introduced.

3. EVIDENCE—*Sufficiency—Railroads—Damages.*

    Evidence in this case of title of plaintiff held sufficient to sustain an action for damages.

4. LIMITATIONS OF ACTIONS—*Trespass—Damages—Acts 1893, ch. 152—Acts 1895, ch. 224.*

    Where the period of limitation is lessened, the time within which an action not barred must be commenced is the balance of the time unexpired according to the law as it stood when the amendatory act passed, provided it shall never exceed the time allowed by the new statute.

5. DAMAGES—*Measure of—Negligence—Evidence.*

    In an action for damages for the negligent construction of a railroad, evidence as to the market value of the land before and since the construction of the road, is inadmissible.

6. DAMAGES—*Measure of—Negligence.*

    The measure of damages for the negligent construction of a railroad, is the difference in the value of the land with the railroad constructed as it was, and what would have been its value had the road been properly constructed.

ACTION by S. T. Carson and wife against the Norfolk and Carolina Railroad Company, heard by Judge *A. L. Coble* and a jury, at October Term, 1900, of EDGECOMBE County Superior Court. From a judgment for the plaintiffs, the defendant appealed.

No counsel for the plaintiffs.

*John L. Bridgers & Son,* for the defendant.

COOK, J.   This was an action brought to recover permanent damages alleged to have been done to plaintiff's land by the wrongful and negligent cutting down and removing the dam and embankment, which protected the land from overflowing, by the defendant in the construction of its road in 1889.   The issues submitted to the jury and their findings were as follows:

1. Are the plaintiffs the owners of the lands described in the complaint?

2. Did the defendant negligently cut and remove the dam and embankment as alleged?

3. Did the defendant wrongfully divert water from its natural flow and direction and throw same upon plaintiff's lands?

4. Is plaintiff's cause of action barred by the statute of limitations?

5. What damage have plaintiffs sustained?

To the first issue the jury responded "Yes," to the second "Yes," to the third "Yes," to the fourth "No," and to the fifth "Four hundred and fifty dollars."

The defendant assigns as errors:

1. That the Court erred in the instructions as given to the jury.

2. That the Court erred in refusing to instruct the jury as requested in the several prayers of the defendant.

3. That the Court erred in refusing to permit the defendant to ask the witness Davenport the question set out in the record.

The first assignment of error is not within the pale of review by this Court, but is excluded from consideration under Rule 27, as heretofore construed.   See Clark's Code, p. 920, and cases there cited.

In the case of *Dugger v. McKesson,* 100 N. C., p. 17, one of the errors assigned was that the plaintiff "excepted to the charge because of the charge as given," (substantially the same as No. 1), which the Court refused to entertain because of its failure to point out specifically the errors complained of.

As to the second assignment there is no averment in the answer that the plaintiffs released their claim for damages by deed or otherwise; or that damages had theretofore been assessed and paid to them. The amendment to the answer sets up an award and satisfaction as an estoppel to the action, but the record fails to show that the same was introduced upon the trial, or there relied upon as a defence; nor does it show that any evidence was offered to support it. So the Court properly refused to give the instruction as prayed for in numbers 1 and 3.

The second prayer was properly refused, and will be considered in connection with the third assignment of errors.

Nor do we find any error upon the part of the Judge in refusing to give the 4th prayer, "that if you believe the evidence, the Court instructs you that in law the plaintiffs are not the owners of the land as alleged in the complaint, and you will answer the issue as to the ownership "No." The defendant does not claim to own the land in controversy, nor does it set up any title in itself. It is established by the verdict that defendant is a trespasser, and the uncontroverted evidence shows such to be the case. The *ownership,* then, becomes material to the defendant only in one aspect, to-wit, to whom is it liable for the damage thus committed? Would the recovery had by the plaintiffs in this action be a bar to any other action?

James Knight devised the "Knight tract" of about 400 acres to James W. Knight, for life, and after his death to his children. The life tenant died eighteen or twenty years

before the trial, leaving six children, who then owned the tract as joint tenants—having unity of title, unity of interest, unity of time and unity of possession.   In 1890 four of the children, under a partition proceedings begun in 1888, had their shares assigned to them in severalty, thus dissolving the joint tenancy between themselves and the other two, viz., the *feme* plaintiff and Theresa, and debarring themselves of all rights and interest in that tract (the one in controversy) assigned to the other two, who held the same still as joint tenants.   But in 1895 this jointure was dissolved, by a sale on the part of Theresa, of her interest (an undivided moiety of the whole) to S. T. Carson; then he and *feme* plaintiff became tenants in common of the land alleged to have been damaged. Now, then, Theresa, by reason of her deed, is barred of any action for or on account of said land.   So, then, the *feme* plaintiff and her husband, S. T. Carson, are the owners in fee of said land, and were so seized and possessed at the time of the commencement of this action, said *feme's* title and possession being unbroken, and S. T. Carson and those under whom he holds, also being unbroken for many years before the trespass down to the time of the institution of this action. Thus we see that the plaintiffs alone have an action against the defendant, no suggestion being made in the pleadings as to any other claim being made to said land.   We now come to consider the 5th prayer—to instruct the jury that the action was barred by the statute of limitations.   The original trespass having taken place in 1889 the twenty years would not expire till 1909; but defendant contends that the act of 1893, ch. 152, as amended by act of 1895, ch. 224, limits the time to five years, which would have been a bar in 1895—the action having been brought in 1896.   But not so.   In *Culbreth v. Downing,* 121 N. C., p. 206, that statute is construed and it is settled that the *reasonable time* given for the commencement of an action not barred, "shall be the balance of the

time unexpired according to the law as it stood when the amendatory act passed, provided it shall never exceed the time allowed by the new statute."

As to the third assignment, the defendant asked its witness, W. J. Davenport, this question, "Taking the farm before the railroad was built and since the railroad has been built, what is the market value of the farm with railroad constructed as it is, taking into consideration the general market value of lands?" Plaintiffs objection to this question was sustained, and defendant excepted.

This question was addressed to the fifth issue "What damage have the plaintiffs sustained?" This exception can not be sustained. Whether the market value of the farm had increased by reason of the presence of the railroad, or whether its market value, burdened with the injuries inflicted by defendant's trespass was greater than before the road was built, was of no concern to the defendant. The fact that lands increase in value by reason of running a railroad through the country, does not entitle the railroad company to share with land-owners in this increase. Nor does it follow that the railroad can damage the lands to the extent, or any part thereof, of this increase of value. Nor would the increased value of the land, by reason of locating a depot on or near plaintiff's land enure to defendant's profit, as prayed for in its second prayer.

The true measure of damages was stated in his Honor's charge to the jury, "The difference in the value of the land with the railroad constructed as it was and what would have been its value had the road been skillfully and properly constructed."

There is no error.